FILED

PEARSON, J.

2011 SEP 30 PM 5:06

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PREMIUM BALLOON ACCESSORIES, INC., | ) ) ) | CASE NO. 1:10CV00979 |
| Plaintiff, | ) ) | |
| v. | ) ) | JUDGE BENITA Y. PEARSON |
| CREATIVE BALLOONS MFG., INC., | ) ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** (Resolving ECF Nos. 36 and 38) |

Plaintiff Premium Balloon Accessories, Inc. ("PBA") filed the present action against

Defendant Creative Balloons Manufacturing, Inc. ("CBM"), claiming trade dress infringement

and breach of a Settlement Agreement. ECF No. 1 at 4-5. CBM filed an Answer and

Counterclaim alleging four counterclaims, discussed below. ECF No. 5 at 7-12.

Before the Court are competing motions for summary judgment.[1] Pursuant to Fed. R.

Civ. P. 56(c), PBA seeks summary judgment in its favor on its own claims for trade dress

infringement and breach of the Settlement Agreement. PBA also seeks summary judgment in its

favor on CBM's counterclaims for: (1) federal and state unfair competition, (2) breach of the

Settlement Agreement, and (3) patent and (4) trade dress infringement. CBM seeks summary

judgment in its favor on PBA's claims for trade dress infringement and breach of the Settlement

---

[1] This matter was reassigned from the docket of another Judge of this Court to the undersigned pursuant to General Order 2011-4 shortly after the filing of the motions for summary judgment.

(1:10CV00979)

Agreement.  ECF Nos. 36, 38.

Based upon careful consideration of the parties' pleadings and oral argument, for the reasons provided below, the Court grants, in part, and denies, in part, the motions for summary judgment.

## I. Factual and Procedural History

PBA and CBM manufacture and distribute balloon products.  ECF Nos. 1 at 2; 5 at 2. PBA and CBM are competitors in the balloon industry with respect to certain products, such as balloon weights.  ECF Nos. 1 at 2; 5 at 2.

### A. Prior Litigation

In 1999, PBA brought suit against CBM for trademark and trade dress infringement and deceptive trade practices.  ECF No. 1 at 2.  The parties resolved that lawsuit by entering into a Settlement Agreement.  ECF No. 1 at 2.

### B. Current Litigation

At the time the parties entered into the Settlement Agreement, it is undisputed that "neither PBA nor CBM made, manufactured, or sold 'Heavy Weight' star-shaped balloon weights" (ECF Nos. 36 at 24 and 38-1 at 15).  Soon thereafter, PBA introduced an eighty-five gram star-shaped balloon weight, in its line of Premium Heavy Weight™ balloon weights, adapted for use in tethering helium filled balloons and, most particularly, balloons made of foil and being extremely large in size.  ECF Nos. 1 at 2; 36 at 13, 16.

After the introduction of PBA's star-shaped Premium Heavy Weight™ balloon weights, CBM expanded its Happy Heavy Weights line by introducing its 100 gram star-shaped SuperStar

(1:10CV00979)

weight.[2] ECF Nos. 1 at 3; ECF No. 38-1 at 9. PBA alleges that CBM's SuperStar balloon weight is substantially identical to PBA's star-shaped Premium Heavy Weight™ balloon weight in size, weight, product configuration, and overall appearance. ECF No. 1 at 3. As a result, PBA filed the instant cause of action alleging that (1) CBM's "SuperStar" balloon weights infringed on PBA's trade dress rights in the "overall appearance of the Premium Heavy Weight balloon weights" pursuant to 15 U.S.C. § 1125(a); and (2) CBM breached the parties' Settlement Agreement from a prior action. ECF No. 1 at 4.

In its Answer, Defendant CBM claims that PBA has not acquired trade dress rights in the star-shaped Premium Heavy Weight balloon weight, and denies that its 100 gram Happy Heavy Weight star-shaped balloon weight infringes. ECF No. 5. CBM also alleges the following counterclaims: (1) Federal and State Unfair Competition; (2) Breach of the Settlement Agreement; (3) Patent infringement of CBM's U.S. patent directed to a balloon sealing device; and (4) Trade dress infringement related to CBM's E-Z Balloon Discs balloon sealing device. ECF No. 5 at 11. Subsequently, pursuant to Federal Rule of Civil Procedure 41(a)(2), Defendant CBM requested that the Court dismiss with prejudice its Third and Fourth Counterclaims for Patent and Trade Dress Infringement, respectively. ECF No. 24.

At the conclusion of oral arguments, the Court granted Defendant CBM's Motion for dismissal of their Third and Fourth Counterclaims with prejudice. PBM reserved the opportunity to present evidence regarding (1) attorney fees and costs related to defending against those

---

[2] CBM alleges that its 100 gram star shaped weight is substantially identical to its previously licensed 8 gram star. ECF No. 38-1.

(1:10CV00979)

counterclaims, at the appropriate time and (2) CBM's "other infringing behavior." *See* Minutes

03/21/2011.

As further described below, both PBA and CBM have both moved for summary

judgment. ECF No. 36; ECF No. 38. In accordance with the Court's ruling granting CBM's

motion for voluntary dismissal of its Third and Fourth Counterclaims with prejudice, PBA's

motion for summary judgment as to CBM's counterclaims for patent and trade dress

infringement is denied as moot. ECF No. 36.

## II. Standard of Review

Summary judgment is not only a defensive tool; claimants can move for summary

judgment on their own claims as well. *See Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th

Cir. 2009). Rule 56(a) of the Rules of Federal Civil Procedure states:

> A party may move for summary judgment, identifying each claim or defense--or
> the part of each claim or defense--on which summary judgment is sought. The
> court shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter
> of law. The court should state on the record the reasons for granting or denying
> the motion.

Both claimants and parties defending against a claim may move for summary judgment "with or

without supporting affidavits." *Alexander*, 576 F.3d at 557-58; *see* Fed.R.Civ.P. 56(a), (b).

Federal Rule of Civil Procedure 56(c)(1)(A), (B) provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by: (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits or
> declarations, stipulations (including those made for purposes of the motion only),
> admissions, interrogatory answers, or other materials; or (B) showing that the
> materials cited do not establish the absence or presence of a genuine dispute, or
> that an adverse party cannot produce admissible evidence to support the fact.

-4-

(1:10CV00979)

Rule 56(e) recites that, "[i]f a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2)

consider the fact undisputed for purposes of the motion." The movant, however, is not required

to file affidavits or other similar materials negating a claim on which its opponent bears the

burden of proof, so long as the movant relies upon the absence of the essential element in the

pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986).

The Court must view the evidence in light most favorable to the non-moving party to

determine whether a genuine issue of material facts exists. *Adickes v. S.H. Kress & Co.*, 398

U.S. 144 (1970); *see also White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir.

1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is

"genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil

cases, the Court must decide "whether reasonable jurors could find by a preponderance of the

evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a

showing sufficient to establish the existence of an element essential to that party's case and on

which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover,

"[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a

genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.

1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-

(1:10CV00979)

moving party is under an affirmative duty to point out specific facts in the record as it has been

established that create a genuine issue of material fact. *Fulson v. Columbus*, 801 F.Supp. 1, 4

(S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome

summary judgment; it is not enough for the non-moving party to show that there is some

metaphysical doubt as to material facts. *Id*.

In the instant case, both parties claim entitlement to summary judgment as a matter of law

due to a lack of genuine issues of material fact.

### III. Discussion

#### A. The Settlement Agreement

##### 1. Dueling Claims

PBA and CBM each seek judgment in its favor on claims for breach of the Settlement

Agreement that resolved the litigation begun in 1999. PBA claims that CBM breached the

Settlement Agreement by CBM's manufacture and sale of its 100 gram star-shaped balloon

weight, in contravention of the terms of the Settlement Agreement which, according to PBA,

provided CBM with a license limited to producing trade dress that was the subject of the 1999

Complaint. ECF No. 36-6 at 2;  ECF Nos. 1 at 4; 36 at 22.  In support of its position, CBM

argues that its 100 gram star-shaped balloon weight is not in breach because PBA's star-shaped

Heavy Weight had not yet been introduced to market during the pendency of the 1999 litigation.

PBA's star-shaped Heavy Weight was not introduced until late 2000, after the Settlement

(1:10CV00979)

Agreement had been reached.[3]  CBM maintains, therefore, that [as far as star-shaped weights are

concerned] the subject of the 1999 Complaint includes the *eight* gram star-shaped balloon

weight, not the heavier star-shaped weight.  ECF No. 36 at 23.

In its second counterclaim, CBM alleges that PBA breached the Settlement Agreement by

filing the instant action because the Settlement Agreement's second paragraph "expressly

allow[s] CBM to offer for sale and sell its star-shaped balloon weights."  ECF No. 5 at 9.  The

Settlement Agreement's second paragraph specifies:

> Upon receipt of the monies aforesaid, PBA shall grant to Creative a fully paid-up
> license under the trade dress that was the subject of the Complaint in the pending
> litigation, namely 1) a star, 2) a circular smile face, 3) a heart, and 4) a teddy bear
> in primary and pastel colors, such license to continue so long as the quality of the products
> products made by Creative is at least consistent with the quality of the products
> presently being made by Creative with such trade dress, and further provided that
> the appearance of the products made by Creative which were the subject of the
> pending litigation are not modified to be closer in appearance to the corresponding
> products of PBA than presently.[4]

ECF No. 36-6 at 2-3.

PBA has  moved for summary judgment in its favor as to CBM's counterclaim (ECF No.

36) as well as its own claims for breach of the Settlement Agreement and trade dress

infringement.  CBM has moved for summary judgment in its favor as to PBA's claims for breach

of the Settlement Agreement and trade dress infringement (ECF No. 38-1), but not its own

counterclaim.  For the reasons below, PBA's motion for summary judgment in its favor on its

---

[3]  Settlement Agreement was effective June 21, 2000 and the last signature was dated July 16, 2000.

[4]  It is undisputed that the Settlement Agreement granted CBM a license to produce an eight gram star-shaped balloon weight.  ECF Nos. 36-6, 36-7; 38-1 at 9-10.

(1:10CV00979)

own claim for breach of the Settlement Agreement (Count 2) and against CBM on Counterclaim 2 is denied.  PBA's motion for summary judgment in its favor on its claim for trade dress infringement (Count 1) is granted.  CBM's motion for summary judgment in its favor on PBA's claim for breach of the Settlement Agreement at Count 2 of the Complaint is granted.

### 2. Construction and Enforcement

Construction and enforcement of a settlement agreement is governed by general principles of state contract law.  *American Int'l v. Int'l Forging Equip. Corp.*, 982 F.2d 989, 995 (6th Cir. 1993).  In interpreting a written agreement, the objective is to determine the intent of the parties.  *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 53 (1989).  The Court presumes the intent of the parties employed in the written instrument.  *Id.*  The Court gives that language its plain and ordinary meaning in the context of the contract.  *Foster Wheeler Enviresponse Inc. v. Franklin City Convention Facility Auth.*, 78 Ohio St. 3d 353, 361 (1997).  If the language is clear and unambiguous, interpretation of the contract is a question of law for the court.  *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio. Inc.*, 15 Ohio St. 3d 321, 322 (1984).

In 2000, the parties' Settlement Agreement:  (1) established that PBA had a trade dress in the balloon weights at issue in the 1999 Complaint (ECF Nos. 36-6 at 2 and 38-1 at 9); (2) granted CBM "a fully paid-up license under the trade dress that was the subject of the Complaint in the pending litigation, namely 1) a star, 2) a circular smile face, 3) a heart, and 4) a teddy bear in primary and pastel colors" (ECF No. 36-6 at 2); and (3) prohibited CBM from modifying the products "to be closer in appearance to the corresponding products of PBA than presently" (ECF

(1:10CV00979)

No. 36-6 at 2-3). PBA argues that the trade dress of its eight gram star-shaped Designer Balloon

Weight is the only star-shaped weight referred to in the 1999 Complaint. ECF No. 36 at 24.

Conversely, CBM argues that both the eight gram and 100 gram star-shaped weights are the

subject of the 1999 Complaint. ECF No. 38-1 at 14.

The 2000 Settlement Agreement explicitly limits CBM's license to PBA's "presently"

corresponding products. At the time the parties entered into the Settlement Agreement, it is

undisputed that PBA's eighty-five gram heavy weight star did not exist. ECF No. 36 at 2.

Concomitantly, CBM admits that "[a]t the time of the Settlement Agreement, neither PBA nor

CBM made, manufactured, or sold 'Heavy Weight' star-shaped balloon weights." ECF No. 38-1

at 15. Therefore, because neither party produced a star-shaped heavy balloon weight when the

1999 lawsuit was filed and settled, the *star-shaped* heavy weights were not a part of the 1999

Complaint or the related Settlement Agreement. The Settlement Agreement's plain and ordinary

meaning in the context of the contract does not preclude CBM's 100 gram balloon star-shaped

weights.

In accordance with the reasons stated above, the Court grants CBM's motion for

summary judgment as to breach of the Settlement Agreement. The Court denies PBA's motion

for summary judgment as to CBM's counterclaim for breach of the Settlement Agreement.

### B. Trade Dress

The Supreme Court has described "trade dress" as the "'design or packaging of a product'

which has acquired a 'secondary meaning' sufficient 'to identify the product with its

manufacturer or source.'" *General Motors Corp. v. Landard Toys, Inc.,* 468 F.3d 405, 414 (6th

(1:10CV00979)

Cir. 2006) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001)).

The Sixth Circuit explained:

> Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, [that] make[s] the source of the product distinguishable from another and . . . promote[s] its sale. Trade dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.

*General Motors Corp.*, 468 F.3d at 414 (citing *Gibson Guitar Corp. v. Paul Reed Smith Guitars,*

423 F.3d 539, 547 n. 10 (6th Cir. 2005)) (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle*

*Outfitters, Inc.*, 280 F.3d 619, 629-30 (6th Cir. 2002)).

A product's registered and unregistered trade dress is protectable under the Lanham Act.

*Ferrari S.P.A. Esercizio Fabriche Automobili E Corse v. Roberts*, 944 F.2d 1235, 1238 (6th Cir.

1991). Section 43(a) of the Lanham Act states, in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

(1:10CV00979)

The Sixth Circuit has held that recovery for trade dress infringement requires the moving party to prove by a preponderance of the evidence that: (1) the trade dress is not functional; (2) the trade dress is distinctive in the marketplace and has acquired "secondary meaning," thereby indicating the source of the goods; and (3) the trade dress of the accused product is confusingly similar. *General Motors Corp.*, 468 F.3d at 414-15 (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000)).

### 1. Functionality

"[A]n alleged infringer can defeat Lanham Act protection by showing that the trade dress, or a feature of the trade dress, is functional." *Kerr Corp. v. Freeman Man'f & Supply Co.*, 2009 U.S. App. LEXIS 6342, at * 12-13 (6th Cir. Mar. 23, 2009) (citing *Fabrication Enters. v. Hygenic Corp.*, 64 F.3d 53, 58 (2d Cir. 1995). "[I]n general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Kerr Corp.*, 2009 U.S. App. LEXIS 6342, at * 13 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995) (internal quotation marks omitted)). The Sixth Circuit has interpreted the phrase "exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage" to mean "whether the particular product configuration is a competitive necessity." *TrafFix Devices*, 532 U.S. at 33.

-11-

(1:10CV00979)

Plaintiff PBA claims that the total image of its star-shaped Premium Heavy Weight™ balloon weight is arbitrary and fanciful and unrelated to the function of "tethering of a balloon." ECF No. 36 at 13. PBA alleges that it is elementary that a weight of sufficient mass to tether balloons may be of virtually any size, shape, configuration, color or the like. ECF No. 36 at 13. Defendant CBM argues that weight or mass itself are not eligible for trade dress protection because to hold so would be contrary to the overall thrust of trade dress protection.[5] ECF No. 45 at 5. CBM claims that the weight of a balloon weight is a wholly functional consideration and one that is entirely independent from its image. ECF No. 45 at 5.

The Court finds that PBA demonstrated that the star-shaped balloon heavy weight is not functional by showing that the "star" shape is merely an ornamental or incidental aspect of the balloon weight. ECF No. 36 at 13. PBA explained that the shape of a "star" is not essential to the purpose of tethering balloons, nor does the specific shape of a "star" affect cost or quality. *Qualitex*, 514 U.S. at 165. Furthermore, the record does not suggest that CBM would be placed "at a significant non-reputation-related disadvantage" if it were forced to adopt a different shape because CBM currently uses a variety of heavy weight balloon shapes. *Id.*; ECF No. 38-1 at 8.

---

[5] Courts have considered "weight" in trade dress cases. In *Mexican Food Specialties, Inc. v. Festida Foods, Ltd.*, the Court considered "[t]he identical placement in the upper right hand corner of the upper color band a comparative laudatory phrase involving a unit of weight measurement ('ounce for ounce' used by Plaintiff, 'pound for pound' used by Defendants)." *Mexican Food Specialties*, 953 F. Supp. 846, 848 (E.D. Mich. 1997).

(1:10CV00979)

## 2. Secondary Meaning

"A descriptive mark achieves secondary meaning when 'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product.'" *Leelanau Wine Cellars, LTD v. Black & Red, Inc.,* 502 F.3d 504, 513 (6th Cir. 2007) (quoting *Inwood Labs. Inc. v. Ives Labs, Inc.,* 456 U.S. 844, 851 n.11 (1982)).  In the Sixth Circuit, courts evaluate seven factors to determine whether a mark has acquired secondary meaning:  "(1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying." *Tumblebus, Inc. v. Cranmer,* 399 F.3d 754, 762 (6th Cir. 2005).

"[I]t is the party seeking protection of a mark who bears the burden of proving that secondary meaning has attached." *DeGidio v. West Group Corp.,* 191 F.Supp 2d 904, 914 (N.D. Ohio 2002) (quoting *Boston Beer Co. v. Slesar Bros. Brewing Co.,* 9 F.3d 175, 182 (1st Cir. 1993)).  "The evidentiary burden necessary to establish secondary meaning is substantial." *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.,* 871 F.2d 590, 596 (6th Cir. 1989).

### i. Direct Consumer Testimony

"The district court should [] consider[] the declarations of the mechanics and distributors who have extensive experience in the industry." *Tenneco Automotive Operating Co., v. Kingdom Auto Parts,* 2010 U.S. App. LEXIS 22571, at * 19 (6th Cir. Oct. 28, 2010).  "Direct consumer testimony 'need not take the form of explicit testimony from consumers stating that 'I care that X

-13-

(1:10CV00979)

produced this product.'" *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298,

312 (6th Cir. 2001) (quoting *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 294 (7th Cir.

1998)). Affidavits of distributors on the issue of secondary meaning are permissible where the

party sells its products primarily through distributors. *Thomas & Betts Corp.*, 138 F.3d at 294.

Here, PBA sells its star-shaped Premium Heavy Weight™ balloon weight primarily

through distributors and manufacturers across the county. ECF No. 36 at 13. As a primary

distributor seller, PBA relies on the following declaration:

> Michael Isaacs, CEO of U.S. Balloon Co., a distributor of balloons and balloon
> accessories that has purchased from Premium for over twenty (20) years, and
> particularly has purchased the star-shaped Premium Heavy Weight™ balloon
> weight for the last nine (9) years, has provided a declaration under penalty of
> perjury that U.S. Balloon Co.'s customers frequently request the star-shaped
> Premium Heavy Weight™ balloon weight by description, including the features
> making up its overall appearance, such as size, weight or mass, configuration,
> material (i.e., smooth plastic) and colors.

ECF No. 36 at 14. CBM claims that Michael Issacs' declaration merely reflects an obvious last

minute attempt by PBA to introduce purported evidence of secondary meaning. ECF No. 45 at 9.

Michael Isaacs' twenty-years of experience coupled with his declaration describing that

U.S. Balloon Co.'s customers frequently request the star-shaped Premium Heavy Weight™

balloon weight by description raises an inference of secondary meaning, and no genuine issue as

to any material fact is present as to this factor.

### ii. Consumer Survey

In cases, such as the case at bar, where a party fails to provide survey evidence, the Sixth

Circuit has treated the factor as favoring neither party, although its absence certainly does not

help the moving party meet its burden to prove secondary meaning. *Herman Miller*, 270 F.3d at

(1:10CV00979)

313 ("While consumer surveys certainly would have been helpful to Herman Miller's claim, their

absence is not fatal, at least on summary judgment.").

### iii. Exclusivity, Length, and Manner of Use

The Supreme Court has stated that there is a statutory presumption of distinctiveness after

five years of exclusive and continuous use pursuant to 15 U.S.C. § 1052(f). *Park'N Fly, Inc. v.*

*Dollar Park & Fly, Inc.*, 469 U.S. 189, 191 (1985)). The statute provides in relevant part:

> The Director may accept as prima facie evidence that the mark has become
> distinctive, as used on or in connection with the applicant's goods in commerce,
> proof of substantially exclusive and continuous use thereof as a mark by the
> applicant in commerce for the *five years before the date on which the claim of*
> *distinctiveness is made* . . . .

15 U.S.C. § 1052(f) (emphasis added). The owner of a descriptive mark must demonstrate that

the mark acquired secondary meaning before its first use by an alleged infringer. *Burke*, 871

F.2d at 596; *see also Ashland Oil, Inc. v. Olymco, Inc.*, 64 F.3d 662, 1995 WL 499466, at *1 (6th

Cir. Aug. 21, 1995) (affirming decision in which district court assessed date of claim of

distinctiveness as arising from defendant's first use).

Here, PBA has demonstrated exclusive and continuous use of its star-shaped Premium

Heavy Weight™ balloon weight. In regard to exclusivity, PBA claims that "no other balloon

weight on the market is more similar in size, weight, shape, configuration, colors or texture

(overall appearance) to Premium's star-shaped Premium Heavy Weight™ balloon weight than

Creative's SuperStar." ECF No. 36 at 14. CBM argues that "PBA has not offered proof of

actual exclusivity in the market place, particularly as it relates to generic star-shaped balloon

weights." ECF No. 45 at 7. CBM's argument is misplaced. CBM erroneously relies on "actual

-15-

(1:10CV00979)

exclusivity" rather than the statutory "substantial[] exclusivity." 15 U.S.C. § 1052(f). With

respect to continuous use, PBA introduced its star-shaped Premium Heavy Weight™ balloon

weight in the year 2000 and, therefore, has satisfied the statutory five-year period. ECF No. 36 at

13, 16.

### iv. Amount and Manner of Advertising

"Absent direct proof, the Court must draw reasonable inferences from evidence of

long-term usage, from considerable effort and expenditure of money toward developing a

reputation and good will for the trademark." Burke, 871 F.2d at 596. Recognizing the

difficulties of direct proof of secondary meaning, the Sixth Circuit is willing to accept advertising

and sales data as a factor in establishing the existence of secondary meaning in the absence of, or

augmented by, direct proof. Anheuser-Busch, Inc. v. Bavarian Brewing Co., 264 F.2d 88 (6th

Cir. 1959). "Advertising expense also is relevant but will not, standing alone, establish

secondary meaning." Burke, 871 F.2d at 596.

In *Tenneco Automotive Operating Co., v. Kingdom Auto Parts*, the Sixth Circuit stated:

> Tenneco offered 'no evidence that Tenneco's advertising is directed to connecting
> its product numbers with its identification as the source of the products' . . . the
> lack of evidence does not weigh in favor of Defendants so much as it does not
> help Tenneco to satisfy its substantial burden.

2010 U.S. App. LEXIS 22571, at * 27-28 (6th Cir. Oct. 28, 2010).

PBA has sold its star-shaped Premium Heavy Weight™ balloon weight to over fifty

distributors and manufacturers across the country. ECF No. 36 at 13. PBA alleged that its

distributors and its distributor's customers post PBA's star-shaped heavy balloon weight on their

respective websites. ECF No. 36 at 13. PBA cites to Michael Isaacs' declaration to explain how

-16-

(1:10CV00979)

this information establishes that distributors and their customers associate PBA's star-shaped

Premium Heavy Weight™ balloon weight with PBA, the source: "[B]ecause of the features

making up its overall appearance, the star-shaped Premium Heavy Weight ™ balloon weight is

recognized by U.S. Balloon Co.'s customers as coming from a single source, if not from

Premium by name." ECF No. 36 at 14. CBM argues that the distributors do not identify PBA as

the manufacturer on their websites. ECF No. 38-1 at 15. PBA argues that CBM has misstated

the law because "[i]t is not necessary that customers be able to identify Premium as associated

with the claimed trade dress, it is only necessary that the trade dress be associated with a

particular source, albeit anonymous, to serve as trade dress. *General Motors Corp.*, 468 F.3d at

418." ECF No. 44 at 9. The Court finds that PBA has met its "substantial" burden as to this

factor.

**v. Amount of Sales and Number of Customers**

The Sixth Circuit explained that "sales volume is relevant . . . [h]owever, it does little if

anything here to demonstrate that the product numbers have acquired secondary meaning.

*Tenneco*, 2010 U.S. App. LEXIS 22571, at * 28; *see Burke*, 871 F.2d at 596. The Sixth Circuit

has found that two million in gross sales is insufficient to establish secondary meaning. *Burke*,

871 F.2d at 596.

PBA has produced its star-shaped Premium Heavy Weight™ balloon weight since the

year 2000 and sold approximately seven million of them for approximately three million dollars,

an amount sufficient to establish secondary meaning. *Id.*; ECF No. 36 at 13-14.

(1:10CV00979)

### vi. Established Place in the Market

PBA has considered its establishment in the market together with the fifth factor–the amount of sales and number of customers. Therefore, this factor weighs slightly in Plaintiff PBA's favor. *See Tenneco*, 2010 U.S. App. LEXIS 22571, at * 28.

### vii. Proof of Intentional Copying

"Intentional copying . . . is not actionable under the Lanham Act 'absent evidence that the copying was done with the intent to derive a benefit from the reputation of another.'" *DeGidio*, 191 F.Supp 2d at 917 (quoting *Zin-Plas Corp. v. Plumbing Quality AGF Co.*, 622 F. Supp. 415, 420 (W.D. Mich. 1985)). Proof of intentional copying alone is not sufficient to establish secondary meaning; rather, such proof serves only to raise a rebuttable presumption of copying. *DeGidio*, 191 F.Supp 2d at 914; *see Libbey Glass, Inc. v. Oneida Ltd*, 61 F. Supp. 2d 700, 708 (N.D. Ohio 1999). A party may successfully rebut the presumption of copying by offering proof of a logical reason, other than an intent to capitalize on a plaintiff's mark. *DeGidio*, 191 F.Supp. 2d at 914.

PBA argues that there is no logical reason for CBM's precise copying other than to capitalize on Premium's existent secondary meaning. ECF No. 36 at 14. CBM successfully rebuts the presumption of copying by claiming that it makes little sense for CBM to redesign an entirely new weight when its existing and already licensed eight gram star weight could be made more massive by increasing the thickness, particularly when it was CBM's understanding that it was not excluded from doing so pursuant to the license created by the Settlement Agreement. ECF No. 45 at 9-10.

-18-

(1:10CV00979)

The Court finds that the record proof of intentional copying evidence in favor of CBM does not alone create a genuine issue of material fact, and holds little probative value in which CBM's declaration may be construed as a legal conclusion devoid of evidence as to how consumers view the star-shaped weight at issue.

| 1. Direct consumer testimony | Slightly favors PBA |
|---|---|
| 2. Consumer surveys | No evidence |
| 3. Exclusivity, length, and manner of use | Strongly favors PBA |
| 4. Amount and manner of advertising | Slightly favors PBA |
| 5. Amount of sales and number of customers | Favors PBA |
| 6. Established place in the market | Slightly favors PBA |
| 7. Proof of intentional copying | Favors CBM |

The probative value that "strongly favors PBA" corroborated by the other factors in favor of PBA allows the Court to infer protectability of PBA's star-shaped Premium Heavy Weight™ balloon weights. The facts support a finding that Plaintiff PBA has satisfied its substantial burden.

### 3. Confusingly Similar

The Sixth Circuit has developed an eight-factor test to evaluate this element of a claim for trade dress infringement, based on the circumstances of each case. The factors that are relevant to the likelihood of confusion are: (1) strength of the plaintiff's mark, (2) relatedness of the goods involved, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of product lines. *Frisch's Rest. Inc. v. Elby's Big Boy of*

-19-

(1:10CV00979)

_Steubenville, Inc._, 670 F.2d 642, 648 (6th Cir. 1982).

The eight factors "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely" and "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." _Magna Inter'l. Inc. v. Deco Plas_, at * 13-14 (N.D. Ohio May 21, 2010) (citing _Homeowners Group, Inc. v. Home Marketing Specialist, Inc._, 931 F.2d 1100, 1107 (6th Cir. 1991)).

Where likelihood of confusion is a "dispositive issue," "[t]o resist summary judgment . . . a nonmoving party must establish, through pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, that there are genuine factual disputes concerning those of the _Frisch's_ factors which may be material in the context of the specific case." _Magna_, 2010 U.S. Dist. LEXIS 50319, at * 14 (citing _Homeowners Group_, 931 F.2d at 1107)).

### i. Strength of Plaintiff's Mark

"The strength of a mark is a factual determination of the mark's distinctiveness." _Magna_, 2010 U.S. Dist. LEXIS 50319, at * 14 (citing _Frisch's_, 759 F.2d at 1264)). "The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due." _Id._ Trademarks are generally categorized as "fanciful, arbitrary, suggestive or descriptive." _Magna_, 2010 U.S. Dist. LEXIS 50319 at * 14 (quoting _Little Caesar Enters., Inc. v. Pizza Caesar, Inc._, 834 F.2d 568, 571 (6th Cir. 1987)).

Marks that are arbitrary or fanciful are entitled to the highest degree of trademark protection. _Magna_, 2010 U.S. Dist. LEXIS 50319, at * 17. The Sixth Circuit explained:

-20-

(1:10CV00979)

> An 'arbitrary' mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product or service to which the mark is attached, such as CAMEL cigarettes or APPLE computers. A 'fanciful' mark is a combination of letters or other symbols signifying nothing other than the product or service to which the mark has been assigned, such as EXXON or KODAK.

*Homeowners Group*, 931 F.2d at 1107 (quoting *Little Caesar Enters.*, 834 F.2d at 571).

"A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer to use imagination and perception to determine the nature of the goods." *Worthington Foods v. Kellogg Co.*, 732 F. Supp. 1417, 1433 (S.D. Ohio 1990). Examples include, "CITIBANK, which connotes an urban or modern bank, or GOLIATH, for wood pencils, connoting a large size." *Homeowners*, 931 F.2d at 1107. "A suggestive term is considered stronger than one that is merely descriptive, and does not require proof of secondary meaning." *Id.*

"A trademark is descriptive 'if it describes: the intended purpose, function or use of the goods; the size of the goods; the class of users of the goods; a desirable characteristic of the goods; or the end effect upon the user.'" *Worthington Foods*, 732 F. Supp. at 1433 (quoting *Wynn Oil. Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1988)). If a mark directly conveys information about the characteristics, functions, or qualitites of the product or service to which it is attached, then the mark is descriptive. *Id.* "Examples of descriptive marks are BEST, SUPERIOR, and PREFERRED." *Homeowners*, 931 F.2d at 1107.

"A generic term is . . . used to commonly describe the relevant type of goods or services." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996). Terms that are generic, such as "aspirin" or "light beer," are the weakest type mark and

-21-

(1:10CV00979)

are not entitled to any trademark protection. *Id*.

The Sixth Circuit has held that jewelry injection wax in a flake shape "is a descriptor of a particular shape of wax . . . [and] is therefore not a generic term for jewelry injection waxes." *Kerr Corp.*, 2009 U.S. App. LEXIS 6342, at * 17. In *Kerr Corp.*, the Court found that the district court "abused its discretion" in finding that the "Flakes" trademark was "generic" and thus ineligible for trademark protection. *Id*. The Court explained:

> A generic term is one that refers to the genus of which the particular product is a species. Generic terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic . . . . Here, the relevant genus is jewelry-injection waxes. 'Flakes' is not a species of jewelry injection waxes; it is a descriptor of a particular shape of wax. 'Flakes' is therefore not a generic term for jewelry injection waxes.

*Id*.

Similarly, here, the relevant genus is balloon heavy weights. The star-shaped heavy weight is not a species of PBA's balloon weights; but rather, a descriptor, a desirable characteristic of that particular balloon heavy weight. *Worthington Foods*, 732 F. Supp. at 1433. Likewise, the star-shaped light, eight gram weight is not a species of balloon weights; it is a descriptor of a particular balloon light weight. As a "descriptor," PBA's star-shaped Premium Heavy Weight™ balloon weight is eligible for trademark protection. *Kerr Corp.*, 2009 U.S. App. LEXIS 6342, at * 17.

### ii. Relatedness of the Goods Involved

The Sixth Circuit evaluates the relatedness of goods by assigning the dispute in question to a place within a "tripartite system." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 798 (6th Cir. 2004). If the parties are in direct competition, "confusion is likely if the marks are

-22-

(1:10CV00979)

sufficiently similar." *Id.* at 797.

"Services and goods are related not because they coexist in the same broad industry, but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 283-84 (6th Cir. 1997). "The question is, are the [goods or services] related so that they are likely to be connected in the mind of a prospective purchaser?" *Homeowners Group*, 931 F.3d at 1109.

> The Sixth Circuit has explained:

> In a variety of other cases, we have held that bulk car wash products and car wash franchises, two slightly different types of oxygenating septic filters, and sit-down and carry-out pizza establishments are related enough to create a likelihood of confusion. However, infrared thermal-imaging devices and ear thermometers, and real-estate brokers and marketing services for real-estate brokers are not related enough to cause a likelihood of confusion.

*AutoZone*, 373 F.3d at 797.

Plaintiff PBA has provided evidence that Defendant CBM's products are in direct competition. ECF No. 1. The two star-shaped balloon heavy weights are likely to cause confusion because both balloon weights share the same shape and have a mass greater than eighty-five grams. ECF No. 36 at 15. Defendant CBM points to several distinctions. ECF No. 38-1 at 11. Similar to the finding in *AutoZone* where the Court reasoned that "two slightly different types of oxygenating septic filters . . . are related enough to create a likelihood of confusion[;]" here, the competing star-shaped heavy weights are "slightly different" with respect to the "raised border" or "curvature of the star points," yet related enough to create a likelihood

-23-

(1:10CV00979)

of confusion. *See AutoZone*, 373 F.3d at 797.

### iii. Similarity of the Marks

"Similarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores*, 109 F.3d at 283. In assessing similarity, the courts should "examine the pronunciation, appearance, and verbal translation of conflicting marks . . . [and] view marks in their entirety and focus on their overall impressions, not individual features." *AutoZone*, 373 F.3d at 795-96. Plaintiff PBA argues that the star-shaped balloon heavy weights are facially identical. This factor thus points toward a likelihood of confusion.

### iv. Evidence of Actual Confusion

No evidence of this factor has been submitted.

### v. Marketing Channels Used

The "marketing channels used" factor examines "the parties' predominant customers and their marketing approaches." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002). The Court examines "how and to whom the respective goods or services of the parties are sold." *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 357 (6th Cir. 2006). Where parties have different customers and market goods or services in different ways, the likelihood of confusion decreases. *Therma-Scan*, 295 F.3d at 636.

PBA alleges that the marketing channels used are similar because both PBA and CBM sell to balloon product distributors and manufacturers. Due to the overlap in customers, the factor weighs in favor of a likelihood of confusion. *Therma-Scan*, 295 F.3d at 636; *Homeowner's Group*, 931 F.2d at 1110.

-24-

(1:10CV00979)

### vi. Likely Degree of Purchaser Care

To assess the degree of purchaser care, courts generally use a "typical buyer exercising ordinary caution" standard. *Daddy's Junky Music Stores*, 109 F.3d at 285. The Sixth Circuit explained:

> This factor involves assessing (1) the type of goods at issue, and (2) the level of sophistication of the purchaser. As to the first inquiry, 'when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases,' and there is accordingly less likelihood of confusion. *Homeowners Group, Inc.*, 931 F.2d at 1111. A sophisticated purchaser exercises a high degree of care and is less likely to be confused as to a product's origin. *Id.* This factor also focuses on the point of sale and is, therefore, generally inapplicable to downstream confusion.

*Gen. Motors Corp.*, 453 F.3d at 357.

A star-shaped balloon weight is neither expensive nor unusual. Defendant CBM admits that the star-shaped balloon weight is not unusual when it describes the weight as "commonly used." ECF No. 38-1 at 21. As to the level of purchaser sophistication, PBA argues that it is highly unlikely that a child or adult in the selection of a balloon weight will evaluate its source, but rather they will merely recognize the overall appearance and purchase based on that recognition. ECF No. 36 at 16. This factor indicates a likelihood of confusion.

### vii. Defendant's Intent in Selecting the Mark

A defendant's intent is relevant because "purposeful copying indicates that the alleged infringer . . . believes that his copying may divert some business from the senior user." *Daddy's Junky Music Stores*, 109 F.3d at 286. Intent "is an issue whose resolution may benefit only the cause of the senior user, not of an alleged infringer." *Id.* at 287. "To paraphrase: innocent intent does not weigh in favor of the infringer." *Magna*, 2010 U.S. Dist. LEXIS 50319, at * 25.

(1:10CV00979)

CBM claims that it understood that it was not excluded from selecting the mark pursuant to the license created by the Settlement Agreement. ECF No. 45 at 9-10. PBA has submitted the following contrary evidence:

> [U]nder the terms of a Settlement Agreement (Exhibit 6) executed by the parties in June of 2000 ending prior litigation (Exhibit 7), Creative was granted "a fully paid-up license under the trade dress that was the subject of the Complaint in the pending litigation"–namely, only the trade dress of Premium's Designer Balloon Weights™ and Premium's smile face and heart-shaped Premium Heavy Weight™ balloon weights. Yet, in 2009, Creative elected to copy the star-shaped Premium Heavy Weight™ balloon weight.

ECF No. 36 at 11-12.

Defendant CBM's "innocent intent" in its interpretation of the Settlement Agreement does not weigh in favor of CBM. *See Magna*, 2010 U.S. Dist. LEXIS 50319, at * 26. The Court finds that PBA's evidence weighs in favor of a likelihood of confusion. *Compare Daddy's Junky Music Store*, 109 F.3d at 287.

### viii. Likelihood of Expansion

A strong likelihood that "either party will expand [its] business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Homeowners Group*, 931 F.3d at 1112. "[A]n affirmative finding [of likelihood of expansion] will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, while a negative finding is not a strong indication to the contrary." *Champions Golf Club*, 78 F.3d at 1122.

The parties agree that expansion by both is likely. ECF No. 36 at 15, 17 ("[T]he likelihood of expansion of product lines [is] not in dispute . . . ."); ECF No. 45 at 11 ("CBM

(1:10CV00979)

expanded its preexisting 100g Happy Heavy Weight product line because its

customers/distributors requested a 100g version of CBM's existing 8g Happy Weight star.").

Because the parties agree that expansion is likely, this factor weighs in favor of a likelihood of

confusion.

| | |
|---|---|
| 1.  Strength of the plaintiff's mark | Favors PBA |
| 2. Relatedness of the goods involved | Favors PBA |
| 3. Similarity of the marks | Favors PBA |
| 4. Evidence of actual confusion | No evidence |
| 5. Marketing channels used | Favors PBA |
| 6. Likely degree of purchaser care | Favors PBA |
| 7. Defendant's intent in selecting the mark | Slightly favors PBA |
| 8.  Likelihood of expansion of product lines | Favors PBA |

The Court finds that CBM has failed to establish a genuine issue of material fact

regarding a relevant likelihood of confusion. *See Homeowner's Group*, 931 F.2d at 1107.

Distributors and/or their customers could easily obtain goods or services from CBM with the

belief that those goods or services are affiliated with PBA, creating a likelihood of confusion. *Id*.

The likelihood of confusion between the competing star-shaped balloon heavy weights is not

genuinely at issue.

The Court grants PBA's Motion for Summary Judgment as to trade dress infringement,

Count 1 of the Complaint.   CBM's motion for judgment in its favor on that claim is denied.

(1:10CV00979)

### C. State and Federal Unfair Competition

"Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act." _Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc._, 280 F.3d 619, 626 n.2 (6th Cir. 2002); _see also Little Caesar Ent._, 834 F.2d at 570 ("Under the Lanham Act . . . we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks."). In unfair competition cases under the Lanham Act, the touchstone or ultimate issue is a likelihood of confusion between the trademarks. _Homeowners_, 931 F.2d at 1107 ("The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.").

In the instant action, CBM asserts a counterclaim against PBA for Federal Unfair Competition under 15 U.S.C. § 1125(a) and State Unfair Competition under § 4165.02 of the Ohio Deceptive Trade Practices Act. ECF No. 5. PBA responds that CBM has not alleged a likelihood of confusion, false designation of origin, or false description or representation by PBA in connection with its sales of PBA's star-shaped Heavy Weight™ balloon weight. ECF No. 36 at 18-19.

Finding that CBM has failed to establish a genuine issue of material fact concerning a likelihood of confusion, the Court grants PBA's motion for summary judgment as to CBM's counterclaim for federal and state unfair competition.

(1:10CV00979)

## IV. Conclusion

For the reasons above, the Court:

(1)     **GRANTS** judgment in favor of Plaintiff Premium Balloon Accessories, Inc.'s on its claim for trade dress infringement (Count 1) and **DENIES** Defendant Creative Balloons Manufacturing, Inc.'s motion for summary judgment on that claim;

(2)     **DENIES** judgment in favor of Plaintiff Premium Balloon Accessories, Inc.'s on its claim for breach of the Settlement Agreement (Count 2);

(3)     **GRANTS** judgment in favor of Defendant/Counterclaimant Creative Balloons Manufacturing, Inc.'s on  Plaintiff Premium Balloon Accessories, Inc.'s claim for Breach of the Settlement Agreement (Count 2);

(4)     **DENIES** judgment in favor of Plaintiff Premium Balloon Accessories, Inc. on Defendant/Counterclaimant Creative Balloons Manufacturing, Inc.'s counterclaim for Breach of Settlement Agreement (Counterclaim 2);

(5)     **GRANTS** judgment in favor of Plaintiff Premium Balloon Accessories, Inc. on Defendant/Counterclaimant Creative Balloons Manufacturing, Inc.'s counterclaim for Federal and State Unfair Competition (Counterclaim 1);

(6)     Defendant/Counterclaimant Creative Balloons Manufacturing, Inc.'s counterclaims for patent and trade dress infringement (Counterclaims 3 and 4) were previously dismissed.  Therefore, Plaintiff Premium Balloon Accessories, Inc.'s  Motion for Summary Judgment as to Defendant Creative Balloons Manufacturing, Inc.'s counterclaims for patent and trade dress infringement are

-29-

(1:10CV00979)

**DENIED AS MOOT**.  Premium Balloon Accessories, Inc.'s  has reserved the right to argue for attorney fees and costs relative to its litigation of these counterclaims.

This case shall proceed on the sole remaining claim--Counterclaim 2--Creative Balloons Manufacturing, Inc.'s counterclaim for Breach of Settlement Agreement.

IT IS SO ORDERED.

_September 30, 2011_
Date

Benita Y. Pearson
United States District Judge

-30-