PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PREMIUM BALLOON ACCESSORIES, INC., | ) | CASE NO. 1:10cv979 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| CREATIVE BALLOONS MFG., INC., | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Regarding ECF Nos. 110; 111] |

On March 25, 2013 the Court held an Evidentiary Hearing on Damages and Attorney

Fees.  *See* 3/25/2013, *Minutes of Proceedings*.  Following the Hearing, the parties filed briefs in

support of their positions.  ECF Nos. 110; 111.  The Court has been advised, having reviewed the

record, the parties' briefs and the applicable law.  For the reasons that follow, the Court awards

Plaintiff $23,693.00 in monetary relief, and attorney fees for defending the Third and Fourth

Counterclaim in an amount to be determined.

**I.  Background**

On September 30, 2011, the Court granted summary judgment in favor of Plaintiff

Premium Balloon Accessories, Inc. ("PBA") and against Defendant Creative Balloon

Manufacturing, Inc. ("CBM") on the issue of trade dress infringement regarding CBM's

SuperStar heavy weight balloon weight.  ECF No. 58 at 27.  Accordingly, PBA seeks monetary

relief and attorneys fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a).[1]  ECF No. 110 at 5.

_____

[1]  PBA also moved for a permanent injunction, which the Court granted.  ECF No. 78.

(1:10cv979)

The Court also granted judgment in favor of PBA and against CBM on CBM's First Counterclaim for Federal and State unfair competition. ECF No. 58 at 28. PBA seeks an award of attorney fees on that counterclaim pursuant to O.R.C. § 4165.03(B).[2] ECF No. 110 at 5. Finally, although CBM voluntarily dismissed its Third and Fourth Counterclaims for patent and trade dress infringement of CBM's balloon sealing device, the Court allowed PBA to reserve the opportunity to present evidence regarding attorney fees and costs related to defending against those counterclaims. 3/21/2011, *Minutes of Proceedings*. As a result, PBA seeks an award of attorney fees pursuant to 35 U.S.C. § 285 and § 1117(a). ECF No. 110 at 5. All told, PBA seeks $504,501.54 in monetary relief and $130,202.88 in attorney fees and costs.[3] ECF No. 110 at 21. CBM argues that the monetary relief and attorney fees sought are not warranted. ECF No. 111.

## II.  Law and Analysis

### A.  The Lanham Act, 15 U.S.C. § 1117(a)

The Lanham Act provides that a plaintiff who succeeds on an infringement claim "shall be entitled…subject to the principles of equity, to recover 1) defendant's profits, 2) any damages sustained by the plaintiff, and 3) the costs of the action." 15 U.S.C. §1117(a). "If the court shall

---

[2] CBM's Second Counterclaim alleged breach of the settlement agreement. ECF No. 5 at 9. PBA does not request attorney fees on that counterclaim. ECF No. 110 at 19.

[3] PBA asserts damages in the amount of $23,693.00, CBM's profits on sales of its SuperStar; $72,066.06 in price erosion damages; and $48,136.10 "for the projected continued price erosion that Premium will suffer over the course of the next five years to bring prices to their. . . 'normal level,'" for a total of $143,895.06. ECF No. 110 at 18. PBA also requests an enhancement of three times the amount of actual damages, totaling $360,606.48 (($72,066.66 + $48,136.10) x 3), bringing the damages sum to $504,501.54.

PBA asks for $122,692.04 in attorney fees and $7,510.84 in costs. ECF No. 110 at 22.

(1:10cv979)

find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id*. "The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 606-607 (6th Cir. 1991) (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989)). The statute specifically provides, however, that the sum to be recovered by the plaintiff "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

PBA argues that it should be awarded monetary relief in the form of 1) CBM's profits from its infringing product, the SuperStar, and 2) actual damages based on the theory of price erosion. ECF No. 110 at 6. CBM argues that PBA is not entitled to monetary relief. ECF No. 111 at 6-22.

### 1. Monetary Relief— CBM's Profits

There is no dispute that the Complaint alleges a violation of 15 U.S.C. § 1125(a). ECF No. 1 at 4. The parties disagree as to whether an award of an infringer's profits is available in a Lanham Act case absent a showing that the defendant acted willfully, and cite case law in support of their position. *See* ECF Nos. 110 at 9 (*Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 606-07 (6th Cir. 1991), finding of willfulness not required); 111 at 6 (*Frisch's Restaurant, Inc. v. Elby's Big Boy*, 849 F.2d 1012, 1015 (6th Cir. 1988), "[f]or a court to order an accounting…, bad faith must be shown.").

The Court finds *Schneider Saddlery Co., Inc. v. Best Shot Pet Products Int'l*, 2009 WL

3

(1:10cv979)

864072 (N.D.Ohio March 31, 2009) instructive.  In *Schneider Saddlery*, Judge O'Malley

considered the issue of willfulness and noted that the conflicting *Wynn Oil* and *Frisch's* decisions

predate the 1999 Lanham Act amendments.  *Id.* at *17.  Because the plain language of the

Lanham Act's amended text does not require a finding of willfulness for violations of § 1125(a)

but does require a finding of willfulness for violations of § 1125(c), the court found that the Act

does not require a willful violation of § 1125(a) as a prerequisite to infringer profits.[4]  *Id.*  The

court further noted that such a finding conforms to post-amendment appellate court decisions in

other circuits finding the same.  *Id.* (citing *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175

(4th Cir. 2006); *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173–75 (3d Cir. 2005); *Quick

Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 348 (5th Cir. 2003)).  Accordingly, the Court

finds that because PBA alleged violations of § 1125(a), a finding of willfulness is not required to

support an award of infringer profits.

      Beyond arguing that its actions were not willful, CBM does not present an argument that

PBA is not otherwise entitled to CBM's profits.  The Court awards PBA monetary relief in the

form of CBM's profits on its SuperStar, totaling $23,693.00.  *See* ECF No. 109-2 at 3 (CBM's

total profits from the sale of its SuperStar).

### 2.  Monetary Relief — Actual Damages of Price Erosion

      The parties also disagree as to whether there must be a finding of actual confusion to

recover actual damages.  *See* ECF Nos. 110 at 8 (only proof of a causal connection between

---

    [4]  Prior to the 1999 amendment, the term "willful" did not appear in the text of the law
and was later added to refer to violations of § 1125(c).  *See* Pub.L. No. 106-43 (1999).

4

(1:10cv979)

infringement and damages is needed, citing *Wynn Oil*); 111 at 11 (actual confusion is a

prerequisite to damages, citing *Balance Dynamics Corp. v. Schmitt Industries Inc.*, 204 F.3d 683,

691 (6th Cir. 2000)).  The Court need not decide the issue because it finds that even if actual

confusion were not required, PBA has not established a causal connection between CBM's

infringement and PBA's decline in price.

   "To recover lost profits on a theory of price erosion, a patentee must show that 'but for'

infringement, it would have sold its product at a higher price." *Ericsson, Inc. v. Harris Corp.*,

352 F.3d 1369, 1378 (Fed. Cir. 2003) (citing *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1

F.3d 1214 (Fed. Cir. 1993)).  A plaintiff's "price erosion theory must account for the nature, or

definition, of the market, similarities between any benchmark market and the market in which

price erosion is alleged, and the effect of the hypothetically increased price on the likely number

of sales at that price in that market." *Crystal Semiconductor Corp. v. TriTech Microelectronics

Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001).  Moreover, "[t]o be entitled to damages, the

plaintiff must prove that 'some damages were the certain result of the wrong' . . . Damages are

precluded where the damage claimed is not the certain result of the wrong." *Schneider Saddlery

Co., Inc.*, 2009 WL 864072 at *18) (quoting *Chain v. Tropodyne Corp.*, 238 F.3d 421, at *4 (6th

Cir. 2000) (table)); *Broan Mfg. Co., Inc. v. Associated Distributors, Inc.*, 923 F.2d 1232, 1235

(6th Cir. 1991).

   PBA asserts that there is compelling evidence of price erosion on sales to its three largest

5

(1:10cv979)

volume customers.[5]  ECF No. 110 at 6.  PBA points out that,

> David Nelson, the President and CEO of Premium, testified as to the decline in
> the price that three of Premium's Gold Price List customers were willing to pay
> for Premium's star-shaped Premium Heavy Weight™ after the entry of Creative's
> star-shaped Happy Heavy Weight/100g SuperStar balloon weight into the market.
> (D. Tr. p. 16, l. 17 – p. 23, l. 1; p. 67, l. 13 – p. 70, l. 19).  Mr. Nelson identified
> the price lists (Prem. Exs. 2 and 4), the sales data (Prem. Exs. 1 and 3), and
> demonstrative graphs showing sales performance over the entire period for which
> Premium has offered its star-shaped Premium Heavy Weight™ balloon weight
> prepared from those price lists and sales data, supporting his testimony.  He
> testified that based on his experience of forty-two years and on that history of
> sales performance, he believed that it would take Premium five (5) years to return
> to charging a price for his star-shaped Premium Heavy Weight™ balloon weights
> in line with the Gold pricing.  (D. Tr. p. 22, l. 11 – p. 23, l. 18; p. 66, ll. 3-22).[6]

ECF No. 110 at 6.  PBA also argues that the causal connection between infringement and

damages is apparent from PBA's pricing and sales data which allegedly shows the "remarkable"

impact CBM's infringement had on PBA's pricing.  ECF No. 110 at 9.  PBA asserts it should

recover $120,202.16, representing historic price erosion damages and the expectation of a five-

year recovery period.  ECF No. 110 at 9.

CBM retorts that its pricing was equal to or higher than PBA's Gold Price List; there is

no documentary evidence showing that any customer demanded PBA lower its prices as a result

of CBM's product; and no evidence CBM submitted lower price quotations to PBA's three

anonymous customers.  ECF No. 111 at 13-14.  Therefore, CBM argues, there is a complete

absence of evidence showing causation, precluding damages based on price erosion.

---

[5]  PBA admits that its heavy weight star price remained stable for all PBA accounts
except three high volume customers.  ECF No. 104 at 65.

[6]  "Gold distributor pricing is reserved for the largest, highest volume distributors that
rely on Premium Balloon Accessories for their balloon accessories."  ECF No. 104 at 17.

(1:10cv979)

PBA did not produce credible evidence that it was forced to lower its prices because

CBM submitted price quotations to PBA's customers or that PBA's customers demanded lower

prices as a result of CBM's product.  At the Hearing, when asked about volume discounts for

PBA customers, Nelson testified on cross examination:

> A.  Well, as I testified before, they were -- we discounted the product to keep the
> business, basically.  So you can call it a volume discount, you can call it a
> competitive discount, you can call it whatever you want, but it was to keep the
> business.
> Q.  And did these particular customers tell you that "You either lower your price
> because of Creative, or you will lose the business?"
> A.  More or less, but not exactly like that.
> Q.  Well, how did they tell you that?
> A.  The writing was on the wall that they could buy the same product from
> someone else for a heck of a lot less money.  That's basically how it was put to
> me.
> Q.  And that would have been put to you verbally, correct?
> A.  Oh, absolutely.
> Q.  That was not put to you in writing, correct?
> A.  No, no.
> Q.  Do you know what Creative's pricing structure is for this product?
> A.  *I can't honestly say what their list price structure is for the product.*  All I
> know is what I learned in conversation.  And I'm sure -- well, I would think it
> wouldn't be their list price.  But the short answer is no, I don't know exactly what
> their pricing is.

ECF No. 104 at 52-53 (emphasis added).  Despite admitting that he did not know what CBM's

pricing was, Nelson testified, during direct examination, that losses were attributable to "what we

had to do in the market to maintain the business, because now we have competition of a product

virtually identical, but at a much lower price."  ECF No. 104 at 19.

During his earlier deposition, Nelson also testified that he did not know if CBM's

SuperStar was priced higher or lower than PBA's product.  ECF No. 107-1 at 45.  Nevertheless,

Nelson averred that his profit margins had "changed in a number of situations because of some

7

(1:10cv979)

very severe, crazy price cutting that has taken place at least from an offer standpoint by your client [CBM]."  ECF No. 107-1 at 45.  It is not clear how Nelson makes the leap that CBM engaged in severe price cutting when he also testified that he did not know what CBM's prices were and that there were "boatloads" of competitors, some of which were making a heavy weight star weight.[7]  ECF Nos. 104 at 54; 107-1 at 40.  Moreover, CBM has produced evidence, unrefuted by PBA, that the pricing on its SuperStar weight was consistent with or higher than PBA's price.  ECF Nos. 109-2 at 1.

PBA has not drawn a causal connection between CBM's infringement and PBA's price reduction.  Rather, PBA merely presented evidence of sales and pricing data that indicates, with respect to three anonymous customers, that PBA's heavy weight star price was less than it had been in previous years.[8]  ECF No. 110 at 6, 9.  The temporal link— that PBA's prices decreased after CBM's heavy weight star entered the market—is insufficient for an award of actual

_____

[7]  When asked how he learns about his competitors, Nelson stated, "I really don't spend much time trying to learn about my competitors."  ECF No. 107-1 at 41.  CBM's witness at the Hearing testified that two other companies, Amscan and Beistle, also make a heavy weight star balloon weight.  ECF No. 104 at 137.

[8]  CBM also points out that the prices paid by the three customers fluctuated, at times surpassing pre-2009 prices, when CBM began offering the SuperStar, and at times falling to around the price offered to manufacturers.  ECF Nos. 111 at 15; 104 at 35.

CBM argues there are other factors that may have reasonably caused PBA's pricing decrease: Nelson testified PBA provided customers with volume discounts, offered promotions, and that prices deviated from the price lists; that the market for heavy weight balloons is one of "flat demand," meaning the market is not growing; a helium shortage and rise in helium prices beginning in 2007 disrupted the demand for balloons; and that PBA's three high volume customers could have discovered PBA's offered manufacturing price and demanded this lower pricing.  ECF No. 111 at 15-16.

(1:10cv979)

damages.[9]  *Cf. Brooktree*, 977 F.2d at 1580 (affirming a jury award of actual damages when the

plaintiff pointed to evidence that the infringer solicited the plaintiff's customers and offered

lower prices, including internal documents revealing a strategy of identifying the plaintiff's

customers); *Minnesota Min. and Mfg. Co.*, 976 F.2d at 1579 (Fed. Cir. 1992) (finding of price

erosion damages warranted when the parties together occupied approximately 85% of the market

and  "engaged in vigorous price competition . . . which caused a steady decline in the price of

casting tape during the infringement period" and that the plaintiff would have charged higher

prices).[10]

　　　　Based on the evidence presented, the Court is not persuaded that "but for" CBM's

infringement, PBA would have sold the same amount of product at a higher price.  Accordingly,

---

[9]  Additionally, PBA's price erosion calculations are inadequate because they fail to take into account the economic principle that decreased sales result from higher prices.  *See* ECF No. 104 at 62-63; *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357, 1359 (Fed. Cir. 2001) (affirming the trial court remittance of price erosion damages awarded by a jury because, "in a credible economic analysis, . . . the patentee must also present evidence of the (presumably reduced) amount of product the patentee would have sold at the higher price.").  PBA's price erosion analysis inaccurately assumes that it would have sold the same amount of product at a higher price as it sold at the lower price, and does not account for any scenario in which it would be the exception.  *See* ECF No. 104 at 19-20; *see also Ericsson, Inc., v. Harris Corp.*, 352 F.3d 1369, 1379 (Fed. Cir. 2003) (jury could have believed the plaintiff's evidence that the market was "inelastic," thus trumping the general rule that decreased sales would have occurred at a higher price).

[10]  PBA does not identify the percentage of the balloon weights market it services. Nelson testified that the figure would be a difficult one to ascertain because "these privately held manufacturers of balloons don't want everybody to know how many they're making and how many they're selling, so it's kind of like a moving target" but that PBA "probably ha[s] a larger market share than any of the people that we actively compete against that do not produce balloons." ECF No. 104 at 54-55.  Such vague statements succeed in supporting PBA's apparent attempt to create a market enigma, but are detrimental to its burden to show actual damages tied to a theory of price erosion.

(1:10cv979)

PBA is precluded from recovering actual damages of price erosion.[11]

### 3. Attorney Fees

PBA argues it should be awarded attorney fees on its trade dress infringement claim.

ECF No. 110 at 18-20.  The Lanham Act provides for an award of attorney fees to the prevailing

party in exceptional cases.  *Hindu Incense v. Meadows*, 692 F.2d 1048, 1051 (6th Cir. 1982).  An

exceptional case is one in which the infringement is "malicious, fraudulent, willful, or

deliberate."  *Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998) (quoting *Hindu Incense*, 692

F.2d at 1051).

PBA argues that this is an exceptional case because of CBM's "propensity for copying,"

and refers to the prior litigation between the parties.  ECF No. 110 at 10.  Based upon the record

before it, the Court does not find this to be an exceptional case.  CBM contends that it believed it

could create and market its SuperStar balloon weight subject to the Settlement Agreement.[12]

---

[11]  PBA also seeks an enhancement of three times, treble, actual damages.  *See* ECF No.
110 at 10, 18.  Because the Court is denying PBA's request for actual damages due to price
erosion, an enhancement is moot.  The Court notes, additionally, that PBA's arguments for
enhancement appear impermissibly punitive in nature rather than compensatory, *see ALPO
Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 970 (D.C.Cir. 1990) (§ 1117(a) provides
courts discretion for an enhancement of damages "as long as the ultimate award qualifies as
'compensation and not [as] a penalty.'"), and the allegations of damages to PBA's "good name"
and the alleged "continuing presence of the offending molds in China" are unsubstantiated.  *See*
ECF Nos. 110 at 18; 104 at 19-20, 92, 111.

[12]  The Settlement Agreement entered into by the parties resolved prior litigation between
them and granted CBM a "fully, paid-up license under the trade dress that was the subject of the
Complaint in the pending litigation" to produce four balloon weights, including an eight gram
star-shaped balloon weight.  ECF No. 108-2 at 1.  The Court has previously ruled that the heavy
weight star at issue was not a subject of the Settlement Agreement or the underlying prior
litigation.

(1:10cv979)

ECF No. 111 at 11.  Although not prevailing on the merits of the breach of settlement issue,

CBM's arguments in support of its position were reasonable, and it cannot be said that CBM's

infringing actions were done maliciously, fraudulently, willfully or deliberately.[13]  *See American*

*Council of Certified Podiatric Physicians and Surgeons*, 185 F.3d 606, 626 (6th Cir. 1999)

("Where a plaintiff sues under a colorable, yet ultimately losing, argument, an award of

attorney's fees is inappropriate.").[14]

### B.  Unfair Competition, O.R.C. § 4165.03(B)

CBM's First Counterclaim alleges that PBA committed acts of deceptive trade practices

in violation of the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01 *et seq*.  ECF No. 5 at 8.

The Court granted summary judgment in favor of PBA on the First Counterclaim.  ECF No. 58 at

28.  PBA now argues that, as the prevailing party, it is entitled to attorney fees pursuant to R.C. §

4165.03(B).  ECF No. 110 at 11.  CBM generally contends that there is no evidence of bad faith

---

[13]  It is significant that, after the Court entered summary judgment in favor of PBA on the trade dress infringement claim and against CBM on the breach of contract claim, CBM continued to market and sell its infringing product until the Court indicated it was inclined to deny CBM's motion for reconsideration.  ECF No. 111 at 10.  PBA asserts this is evidence of CBM's "in your face attitude."  ECF No. 110 at 11.  CBM's behavior post-judgment is the best evidence of willful infringement.  PBA, however, has not pointed to legal fees incurred during this time related to CBM's alleged willfulness and none are apparent from the record.

[14]  Moreover, CBM asserts that it had been selling other heavy balloon weights, the shape of which were the subject of the agreement, without protest from PBA.  ECF Nos. 104 at 145; 38-1 at 6.  The record also reflects that CBM first made the SuperStar with the registered trademark "SuperStar" on its face.  ECF No. 111 at 8.  PBA thereafter contacted CBM, objecting to the product, and CBM changed the appearance of the SuperStar by removing the new trademark name and imprinting the same smiley face that appears on CBM's other, non-objectionable weights.  ECF Nos. 111 at 8; 104 at 106.  These actions by CBM tend to evince cooperation more than willful infringement.

(1:10cv979)

in the record; its view of the Settlement Agreement cannot be described as without foundation; and the exact fees relating to the First Counterclaim cannot be assessed by reviewing PBA's billing statements.  ECF No. 111 at 21, 22.

> R.C. § 4165.03(B) provides as follows:
>
> The court may award in accordance with this division reasonable attorney's fees to the prevailing party in either type of civil action authorized by division (A) of this section.  An award of attorney's fees may be assessed against a plaintiff if the court finds that the plaintiff knew the action to be groundless.

*See also Balsley v. LFP, Inc.*, 691 F.3d 747, 774 (6th Cir. 2012) (attorney fees awarded only upon a showing the claimant filed the claim knowing it was groundless).

A review of the record reveals that the relevant portion of the First Counterclaim alleges that "PBA, with knowledge that it did not acquire any trade dress rights in the configurations of its Heavy Balloon Weights or Premium Heavy Weight balloon weights, brought this action against CBM for the purpose of harassing CBM, disparaging the good name of CBM in the balloon industry and diverting business from CBM to PBA."  ECF No. 5 at 7-8.  PBA asserts that CBM did not bring forth any evidence that PBA knew the trade dress of its balloon weights were not unique or lacked secondary meaning and, thus, the counterclaim was groundless.  ECF. 110 at 12.  Although CBM did not advance any evidence in support of this counterclaim either in its briefs or at the Hearing, the lack of evidence presented at and after the summary judgment stage does not render a counterclaim groundless at the time the counterclaim was alleged.  *See Balsley v. LFP, Inc.*, 2011 WL 1303738, at *4 (N.D.Ohio March 31, 2011) (party seeking fees must

(1:10cv979)

demonstrate the plaintiff knew the action was groundless at the time of the complaint).[15]

PBA argues that the Settlement Agreement is evidence that CBM "understood for years that Premium believed that it had trade dress rights in its balloon weights, and that Creative acquiesced in that belief."  ECF No. 110 at 12.  However, the record reflects that even if CBM understood for years that PBA believed it had trade dress rights in its balloon weights subject to the 1999 Settlement Agreement, CBM did not believe that PBA had trade dress rights in the *weight* or *thickness* of its heavy weight balloon weights.  *See* ECF Nos. 38-1 at 16-20; 45 at 1-10.  Therefore, the existence of the Settlement Agreement does not support PBA's allegation that CBM knew the First Counterclaim was groundless when made.  Without more, PBA has not presented sufficient evidence showing CBM's First Counterclaim was groundless and that CBM knew it to be so, precluding an award of attorney fees.

### C.  Voluntarily Dismissed Counterclaims, 35 U.S.C. § 285 and § 1117(a)[16]

PBA argues that it is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285 or 15 U.S.C. § 1117(a) for having to defend itself against CBM's Third and Fourth Counterclaims,

---

[15] PBA cites to *Dragani v. Eastman Kodak Co.*, 576 F.Supp.755, 766 (S.D.Ohio 1983) in support of its argument that CBM lacked a factual basis for its allegations.  ECF No. 110 at 13.  *Dragani* merely found that the plaintiff lacked factual basis for the allegations in the complaint and awarded summary judgment to the defendants—it did not consider the issue of attorney fees.  *Id*.

[16] 35 U.S.C.A § 285 applies to patents, the issue in the Third Counterclaim.  15 U.S.C. § 1117(a) governs trade dress, the issue in the Fourth Counterclaim.  For the purpose of determining wether attorney fees are based on "exceptional circumstances," the statutes are interpreted in substantially the same way.  *See, e.g., Vuitton et Fils, S.A. v. Crown Handbags*, 492 F.Supp.1071, 1078-79 (S.D.N.Y. 1979)(noting that the Lanham Act's exceptional language was drawn from the same language in 35 U.S.C. § 285).

13

(1:10cv979)

which CBM voluntarily dismissed.  ECF No. 110 at 16.  35 U.S.C. § 285 provides that a "court

in exceptional cases may award reasonable attorney fees to the prevailing party."  PBA argues

that it is a prevailing party because CBM voluntarily dismissed its counterclaims.  ECF No. 110

at 16.  CBM does not dispute that PBA is a prevailing party.  It argues, however, that the instant

case, in general, and the Third and Fourth counterclaims, in particular, are not exceptional for

purposes of awarding attorney fees pursuant to 35 U.S.C. § 285.  ECF No. 111 at 22.

        In determining whether to award fees pursuant to 35 U.S.C. § 285, a court must 1)

determine whether there is clear and convincing evidence that the case is exceptional; and 2) if

so, determine in its discretion whether to award fees to the prevailing party.  *Digeo, Inc. v.*

*Audible, Inc.*, 505 F.3d 1362, 1366–67 (Fed.Cir. 2007).  A case is exceptional "when there has

been some material inappropriate conduct related to the matter in litigation, such as willful

infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation,

vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions."

*iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1376-77 (Fed. Cir. 2011) (quoting *Brooks Furniture*

*Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378, 1381 (Fed.Cir. 2005)).

"Absent misconduct during patent prosecution or litigation, sanctions may be imposed against a

patent plaintiff 'only if both (1) the litigation is brought in subjective bad faith, and (2) the

litigation is objectively baseless.'"  *iLOR*, 631 F.3d at 1377 (quoting *Brooks Furniture*, 393 F.3d

at 1381).  "Under this exacting standard, the plaintiff's case must have no objective foundation,

and the plaintiff must actually know this."  *iLOR*, 631 F.3d at 1377.  Both subjective and

objective prongs must be established by clear and convincing evidence.  *Id.*

14

(1:10cv979)

In its Answer, CBM brought four counterclaims, including the Third Counterclaim for patent infringement on its balloon sealing device, and the Fourth Counterclaim for trade dress infringement on its balloon sealing device.  ECF No. 5 at 9, 11.  After communications between the parties regarding the viability of the Third and Fourth Counterclaims, CBM filed a motion to dismiss the counterclaims with prejudice pursuant to Rule 41(a)(2).  ECF No. 24.  PBA opposed this motion to dismiss because it wanted to ensure prevailing party status in order to seek attorney fees for its defense against the counterclaims.  ECF No. 28 at 5.  The Court granted CBM's motion and dismissed the Third and Fourth Counterclaims over PBA's objection, but allowed PBA the opportunity to seek attorney fees as to these counterclaims at a later date.  *See* 3/21/2011, *Minutes of Proceedings*.  PBA now asserts that right and argues that the Third and Fourth Counterclaims were frivolous and that it should be awarded attorney fees for having to defend these claims.[17]  ECF No. 110 at 17.

### 1.  Third Counterclaim

PBA argues that the Third Counterclaim alleging patent infringement of CBM's balloon sealing device, the E-Z Balloon Disc, is frivolous because PBA had been making and selling a similar balloon sealing device, the SafeTite, since at least 1989, years prior to CBM's 1993

---

[17]  Although PBA criticizes CBM's actions in obtaining a patent on its balloon sealing device (*see* ECF Nos. 104 at 82, 86; 110 at 15), PBA does not appear to seek attorney fees based on a theory of fraud on the patent office or inequitable conduct.  *See* ECF No. 110 at 14, 17 (arguing for attorney fees because CBM's counterclaims were "frivolous").  To the extent PBA asserts CBM's conduct in front of the patent office was improper, it has not advanced clear and convincing evidence of intent to deceive or even alleged that CBM had the requisite intent to deceive.  *See Eli Lilly and Company v. Zenith Goldline Pharmaceuticals, Inc.*, 471 F.3d 1369, 1381-82 (Fed.Cir. 2006) (intent element necessary for a finding of inequitable conduct).

15

(1:10cv979)

patent application for its device.[18]  ECF No. 110 at 14.  As evidence in support, PBA points to a

1989 sales catalog that includes PBA's device.  ECF No. 110 at 14-15.  PBA also indicates

CBM's E-Z Balloon Disc instruction document, which PBA argues is "pictorially" similar to the

instructions in the 1989 catalog.  ECF No. 110 at 15.  PBA argues that CBM knew about PBA's

SafeTite device and it could not have reasonably believed the earlier SafeTite device infringed

CBM's E-Z Disc.

        The record reflects that PBA's SafeTite device was offered for sale in a 1989 catalog and

had been manufactured and sold beginning in or around 1984.  ECF Nos. 104 at 87; 28-1 at 10.

The record further reflects that the two sealing devices appear to be identical except that CBM's

is white plastic and has four slots while PBA's is clear plastic and has two slots.  Moreover, the

instruction sheet for CBM's product mimics the instructions in the catalog for PBA's product.

ECF No. 28-1 at 13; P Ex. 14.  When asked at the Hearing how his design came about, Jules

Pollack, the founder of CBM and inventor of the E-Z Balloon Disc, answered, "I drew it at my

kitchen table."  ECF No. 104 at 107.  The Court does not find this response credible.  It is

difficult to accept that someone actively employed in the balloon accessory industry would have

never seen a balloon sealing device prior to drawing one at his kitchen table that is substantially

identical to another balloon sealing device already on the market.

        Thus, the Court finds that the Third Counterclaim represents an exceptional case.  Given

PBA's prior sealing device, no reasonable litigant would have reasonably expected success on

_____

        [18]  PBA's SafeTite balloon sealing device is a round plastic-like disc with two slots for
sealing a balloon—CBM's E-Z Balloon Disc is a round plastic-like disc with four slots for
sealing a balloon.  ECF Nos. 28-2; 28-1 at 10.

(1:10cv979)

CBM's patent infringement counterclaim--that Jules Pollack developed a new and unique

balloon sealing device, rendering it objectively baseless.[19]  *See iLOR, 631 F.3d at 1377*.

Moreover, CBM's assertion that the design similarities were a "coincidence" is not plausible, and

the Court finds it likely that CBM knew about PBA's balloon sealing device prior to CBM's

patent application and prior to this lawsuit.  As such, the Court finds that the "lack of foundation

for the claim 'was either known or so obvious that it should have been known'" by CBM.[20]  *See*

*Highmark, Inc. v. Allcare Health Management Systems, Inc., 687 F.3d 1300, 1309 (Fed.Cir.*

*2012*) (quoting *In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed.Cir. 2007)*)); *see also iLOR,*

*631 F.3d at 1377*.

### 2.  Fourth Counterclaim

In the Fourth Counterclaim, CBA alleges that PBA infringed on the trade dress of its E-Z

Balloon Disc, the sealing device described above.  ECF No. 5 at 11.  Attorney fees may be

awarded to a prevailing party under 15 U.S.C. § 1117(a) in an exceptional case when a party

brings a claim that is "oppressive."  *Eagles, Ltd. v. Am. Eagle Found., 356 F.3d 724, 728 (6th*

*Cir. 2004*) (quoting *Balance Dynamics Corp. v. Schmitt Indus., Inc., 208 F.3d 212, at *2 (6th Cir.*

*Feb. 25, 2000) (table)*)).  To determine whether a claim is oppressive, a court makes "an objective

inquiry into whether the suit was unfounded when it was brought and a subjective inquiry into

---

[19]  Even CBM has not been able to muster an argument that the dismissed counterclaims were meritorious.

[20]  PBA also argues that CBM and PBA were involved in litigation with each other in 1999 and that CBM did not bring an action alleging patent and trade dress infringement on its sealing device until the more recent litigation in 2010.  ECF No. 110 at 16.

(1:10cv979)

the plaintiff's conduct during litigation." *Eagles, Ltd.*, 356 F.3d at 729.  The purpose of an award

"provide[s] protection against unfounded suits brought by trademark owners for harassment and

the like." *Id.* (quoting S.Rep. No. 93-1400 (1974)), reprinted in 1974 U.S.C.C.A.N. 7132, 7136).

For the reasons explained above, the Court finds that the Fourth Counterclaim is an exceptional

case under § 1117(a).

### 3.  Discretionary Award of Fees

Next the Court must determine, in its discretion, whether to award attorney fees to PBA

pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117(a).  Contrary to the assertions of PBA, the

record reflects that CBM sought to voluntarily dismiss the Third and Fourth Counterclaims prior

to either party filing motions for summary judgment.  During the Hearing, PBA stated, "in fact,

one of the things we complain about is how much we got sort of danced around on their patent

counterclaim and on their trade dress counterclaim, to the point where we had to file a motion for

summary judgment before they would then withdraw it."  ECF No. 104 at 77; *see also* ECF No.

104 at 80, 87.  This is a misstatement.  The docket clearly shows that CBM moved to voluntarily

dismiss its Third and Fourth Counterclaims prior to the motions for summary judgment and,

moreover, that PBA opposed voluntary dismissal.  *See* ECF Nos. 24; 28.

Although PBA now states that it spent $13,380 on defending the Third Counterclaim, and

$6,000-$8,000 defending the Fourth Counterclaim, for a total of $19,380 or $21,380, the record

reflects that at the time PBA objected to the voluntary dismissal of the Third and Fourth

Counterclaims it stated that attorney fees as to both counterclaims "are approximately $10,000."

ECF No. 28-8 at 1.  It appears that any amount above $10,000 was accrued fighting the dismissal

18

(1:10cv979)

of the counterclaims for the sole purpose of retaining the right to recover existing and additional

attorney fees.  ECF No. 28 at 5 (explaining that, should CBM's counterclaims be dismissed,

"Premium may be foreclosed from its pursuit of this meritorious claim for attorney fees incurred

in defending the stated counterclaims under 35 U.S.C. § 285.").  While the Court respects a

party's right to pursue attorney fees, it will not award fees to a party that were generated for the

purpose of begetting more attorney fees, thwarting the opposing party's attempt to streamline

litigation, and unnecessarily expending Court resources.[21]  Thus, attorney fees PBA may recover

for defending itself against the Third and Fourth Counterclaims will be capped at $10,000, the

alleged amount of attorney fees generated at the time CBM moved for voluntary dismissal.

The record before the Court on this issue is somewhat troubling.  CBM argues that it first

learned of the 1989 catalog at the case management conference, wherein it alleges PBA asserted

it was in possession of documentation which it alleged would prove that PBA's Safetite sealing

device had been publicly used or known prior to the filing of CBM's patent application on its

device.  ECF Nos. 111 at 23; 24 at 3.  CBM states that its counsel "immediately requested that

PBA produce the purported documentation during the Case Management Conference, which

PBA elected not to do despite wa[]ving the purported documentation in front of those present at

---

[21]  Although PBA spent pages of its motion and reply briefs arguing the merits of the
Third and Fourth Counterclaims, this exercise was unnecessary given CBM's voluntary
dismissal.  *See* ECF Nos. 36 at 19-22; 49 at 9-12.
The record also reflects that PBA communicated that it would agree to dismissal of the
counterclaims if CBM would pay related attorney fees, which CBM declined to do.  ECF No. 24-
5 at 3.  Although CBM points out that PBA could have stipulated to dismissal while reserving
the right to recover attorney fees (ECF No. 111 at 15), there is nothing in the record suggesting
that CBM presented PBA with that option.

(1:10cv979)

the Case Management Conference."  ECF No. 24 at 3.  CBM further argues that its counsel made

several additional requests for the purported documentation which it claims were ignored.  ECF

Nos. 111 at 23; 24 at 3.  Finally, CBM asserts, PBA produced the catalog with missing pages,

requiring counsel for CBM to travel to the office of counsel for PBA to inspect the document in

person.  ECF No. 111-1 at 3; 24-2 at 2.  PBA does not convincingly respond to these allegations

of  stonewalling.[22]

The Court laments the lack of cooperation between the parties.[23]  Exercising its

discretion, the Court finds that an award of award attorney fees to PBA for its defense against

Counterclaims Three and Four is appropriate.  Given the history of the case, as explained above,

the attorneys fees, are capped at $10,000.

---

[22]  Although PBA states that CBM "refused to dismiss" its counterclaims until months
after viewing the catalog, the record reflects that CBM first indicated to PBA its willingness to
dismiss the counterclaims, if warranted, on the day of the Case Management Conference,
September 17, 2010.  ECF No. 24-1 at 2.  The bulk of the delay in the dismissal, filed by CBM
on December 8, 2010, appeared to be in large or equal part due to PBA.  *See e.g.* ECF No. 24-1;
24-2; 24-3; 24-4; 24-5; 24-6; 24-7 (emails between counsel regarding the viability of the
counterclaims and dismissal).

[23]  The Court commends to counsel an essay by the Hon. Mark W. Bennett, *Essay:  From
the "No Spittin', No Cussin' and No Summary Judgment" Days of Employment Discrimination
Litigation to the "Defendant's Summary Judgment Affirmed Without Comment" Days:  One
Judge's Four-Decade Perspective*, 57 N.Y.L. Sch. L. Rev. 685 (2012-2013):

> . . . Opposing counsel in the halcyon days actually spent time talking to each other
> to help move the case along.  This kept costs down because fewer matters needed
> to be dealt with formally.  Many agreements between opposing counsel were
> consummated with a simple handshake, rarely requiring a confirming letter. . . .  A
> lawyer's word was her bond; no need for endless confirming letters or today's
> twenty-four-hour e-mails. . . .

*Id.* at 689-90.

(1:10cv979)

### 4.  The Amount of Attorney Fees

Although PBA stated that its attorney fees at the time CBM moved to voluntarily dismiss its counterclaims amounted to approximately $10,000, PBA does not include the hourly rate each attorney charged or the prevailing market rate for similar services in the area.[24]  The Court is, therefore, unable to determine the appropriate amount of fees under the lodestar method as required.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (courts multiply the attorney's reasonable hourly rate by the number of reasonable hours worked); *U.S. Structures, Inc. v. J.P. Structures, Inc*., 130 F.3d 1185, 1193 (6th Cri. 1997) (district courts must determine whether the hours expended were reasonable and that the hourly rates are customary); *WHG TM Corp. v. Patel*, 2008 WL 495794, at *2 (N.D.Ohio Feb. 22, 2008).  Accordingly, within seven (7) days of this Order, PBA shall file with the Court the proposed hourly rate for each attorney and the reasons why the proposed rates are reasonable, taking into account the type of legal work performed and the geographic area.  Also, within seven (7) days of this order, PBA shall submit more specific invoicing, if such invoicing is available, and indicate the items that relate to the Third and Fourth Counterclaims, or to otherwise indicate clearly which items in the previously submitted  invoice are related to the Third and Fourth Counterclaims.

### III.  Conclusion

For the reasons stated above, the Court awards PBA monetary relief in the amount of $23,693.00, representing CBM's profits on the sale of its SuperStar.  The Court also awards PBA

---

[24]  At the Hearing, PBA submitted invoices of legal fees accrued.  The invoices list the date, a brief description of work done, the amount charged, and the individual who performed the task.

(1:10cv979)

attorney fees for defending the Third and Fourth Counterclaims in an amount to be determined, but no greater than $10,000.  The case is terminated.


      IT IS SO ORDERED.


 July 31, 2013                                       */s/ Benita Y. Pearson*          
Date                                                Benita Y. Pearson
                                                  United States District Judge